IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:22-cr-42 |
| | ) | |
| CHRISTAFER DOUGLAS FRIEND, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND
MOTION FOR ACCEPTANCE OF RESPONSBILITY DECREASE**

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and E. Rebecca Gantt, Assistant U.S. Attorney, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG" or "guidelines").

The United States has no objections to the Presentence Investigation Report ("PSR"), and for the reasons discussed below, submits that the defendant's single unresolved objection to the PSR's offense level calculation should be overruled. The Probation Officer correctly determined the advisory guidelines range as 235 to 293 months of imprisonment, resulting from an offense level of 38 and criminal history category of I.

Given the heinous nature of the defendant's conduct and the extreme danger he poses towards children, the government requests an upward variance and submits that a sentence of imprisonment of 360 months, followed by a supervised release term of life, would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

I.  **Procedural Background**

The defendant was arrested the night of March 29, 2022 in Chesapeake, Virginia, after paying whom he believed to be the father of an eleven-year-old girl $200 for a sexual encounter with the man's daughter. ECF No. 4 (affidavit). A criminal complaint was obtained the next day and the defendant was ordered detained pending trial. ECF Nos. 3, 8, 16. On April 20, 2022, a federal grand jury returned a five-count indictment charging the defendant with attempted sex trafficking of a minor (Count 1), in violation of 18 U.S.C. §§ 1591(a)(1) & 2, attempted coercion and enticement of a minor (Count 2), in violation of 18 U.S.C. §§ 2422(b) & 2, distribution of child sexual abuse material (Count 3), in violation of 18 U.S.C. § 2252(a)(2), possession of child sexual abuse material (Count 4), in violation of 18 U.S.C. § 2252(a)(4), and attempted transfer of obscene material to a minor (Count 5), in violation of 18 U.S.C. §§ 1470 & 2.

On July 6, 2022, the defendant entered a plea of guilty before U.S. Magistrate Judge Robert J. Krask to Count 1. ECF Nos. 28, 30. On October 13, 2022, the U.S. Probation Office filed a PSR which calculated the defendant's total offense level as 38 and his criminal history category as I, resulting in a guidelines range of 235 to 293 months of imprisonment. ECF No. 35 ¶¶ 70, 71. The government had no objections to the PSR. The defendant objected to the PSR's application of a five-level enhancement for being a repeat and dangerous sex offender against minors under USSG § 4B1.5(b)(1). The final sentencing PSR maintained this enhancement and resulting guidelines range. ECF No. 36 at 20, 28.

II. **Objection to the Presentence Investigation Report**

The only outstanding objection is the defendant's objection to a five-level enhancement for being a repeat and dangerous sex offender against minors under USSG § 4B1.5(b)(1). The PSR was correct to apply this enhancement, which is clearly merited in light of the defendant's repeated

egregious conduct with respect to John Doe, an eight-year-old minor, and the Court should accordingly overrule the objection.

This enhancement applies where 1) the defendant's offense of conviction is "a covered sex crime," 2) he is not a career offender and lacks a prior sex offense conviction, and 3) "the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b)(1). A "pattern of activity" exists where "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.* App. n.4(B). Finally, as relevant here, "prohibited sexual conduct" is defined including the production of child pornography, as well as any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B). *Id.* App. n.4(A). The government understands the nature of the defendant's objection to principally be a factual one, regarding whether the alleged conduct occurred, rather than a legal one regarding whether the alleged conduct meets the criteria for the enhancement.

"The government bears the burden of proving the facts supporting the enhancement by a preponderance of the evidence." *United States v. Andrews*, 808 F.3d 964, 968 (4th Cir. 2015). As noted in the PSR, this enhancement is based on the defendant's abuse of John Doe, an eight-year-old minor, in late 2021: specifically, the defendant manually and orally sodomized John Doe on at least two occasions, which abuse the defendant also recorded and uploaded to an online cloud storage account.

As documented in the PSR and as the testimony of the case agent, Special Agent Kathryn Nguyen, at the sentencing hearing will show, the government easily satisfies its burden regarding any of three independent sources of evidence, which are all consistent: 1) the defendant's own words, 2) the statements of John Doe in a forensic interview, and 3) the recordings that the

3

defendant made of this abuse (which clearly constitute the production of child pornography, regardless of who the defendant was abusing in those recordings).

First, as to the defendant's own statements, when chatting with the undercover agent, the defendant stated that he had abused John Doe a "few times," but had to stop once John Doe told his mother that the defendant "was sucking on his cock." He also stated he wished he had abused John Doe when he was a baby. PSR ¶ 11. Special Agent Nguyen will further testify that the defendant made very similar specific admissions in online chats with other correspondents. Second, as the PSR notes, after the defendant was arrested, John Doe was forensically interviewed and stated to the examiner that the defendant has "sucked" his "wiener" two times while he and the defendant were watching movies. PSR ¶ 32. Finally, Special Agent Nguyen will testify to images, including a video, that she found in the defendant's online storage account, which depict the defendant orally and manually sodomizing a child, and that the child's mother identified both the defendant and John Doe. The metadata of these images indicates that they were created by the defendant on two separate occasions, which dates John Doe's mother confirmed John Doe was with the defendant. PSR at 24 – 25.

Any one of these three sources of evidence is sufficient to support the enhancement by a preponderance of the evidence; when combined, they overwhelmingly support that the defendant is a repeated and dangerous abuser of children. Accordingly, the defendant's objection should be overruled.

### III. Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility

The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. USSG § 3E1.1(b). The PSR has properly applied a two-level decrease in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater. Accordingly, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b). This reduction is already reflected in the PSR's offense level calculation. PSR ¶ 29.

### IV. Standards Governing Sentencing

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id.* (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id.* (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351-52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to

support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

**V.    The Statutory Sentencing Factors**

A. <u>The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))</u>

The defendant's predatory behavior directed towards children has been repeated, persistent, and varied. In the spring of 2022, he responded to an undercover agent (UC)'s profile posting, which posting was suggestive of a family where children were being abused by their adult relatives. The defendant asked to switch to another chatting platform. Then, the defendant immediately began asking "Mike," the 45-year-old father of an eleven-year-old girl "Kylie," about Mike's sexual abuse of Kylie and how much cash Mike wanted for the defendant to participate in Kylie's abuse. After Mike proposed $100 for an hour, in an effort to ascertain that Mike and Kylie were real, the defendant called Mike and spoke with both him and Kylie. In the several-minute call, which the government will play for the Court at sentencing as evidence of the defendant's extreme danger to children, the defendant asked to talk to Kylie directly and inquired whether she liked it when her "daddy" touched her, and asked her if she had sucked his "pee pee."

After the call, the defendant continued chatting with Mike. As the conversation continued, he sent a picture of his own erect penis which he asked Mike to show to Kylie. He later followed up to ask if she liked it. He also sent Mike a child pornography image of a young girl, and revealed

6

Case 2:22-cr-00042-JAG-RJK   Document 37   Filed 11/04/22   Page 7 of 16 PageID# 163

his own prior abuse of John Doe. The defendant said he would ejaculate on Kylie's genitalia and "lick it clean." As the time of the meet-up approached, the defendant spontaneously said he wanted to pay $200 for the encounter and asked if he could stay for more than an hour. He also asked if Kylie wanted some candy, and promised to bring her favorite.

Just over four hours after the conversation began, the defendant arrived at the pre-determined location with a chocolate bar for Kylie in his pocket. He agreed he would not leave any marks on Kylie that her mother would be able to detect. After he paid $200 to a UC, he was arrested.

Subsequent investigation revealed that this event was not an aberration and instead was entirely consistent with the defendant's past behavior and desires. In addition to the hands-on abuse of the highly vulnerable John Doe discussed in Section II, above, the defendant had also amassed an extraordinarily collection of child pornography across multiple platforms. His cell phone contained 358 images and 48 videos of child abuse, including children as young as babies. He also kept *thousands* of child pornography files in online cloud storage accounts through the MEGA platform, including more than 3,000 videos. One such video was over an hour long.

As is evident from just a few select descriptions in the PSR, some of the files were particularly horrific. Notably, the defendant organized his child pornography into folders, including "Good" and "6-10." One video that the defendant classified as "Good" is over five minutes long and depicts "an adult male with his pants down around his thighs carrying a male toddler and laying the toddler on a bed. The adult male looks at the camera while he inserts his penis into the anus of the male toddler. The adult male then takes the toddler's legs and pushes them past the toddler's head to fully expose his anus, while the adult male is inserting his penis the toddler is crying. Later in the video the adult male turns the child on his side and lays behind

him and continues to insert his penis in the child's anus, the child cries for the entire time." PSR at 13, ¶ 33.

B. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

There is no apparent explanation for the defendant's horrific conduct from his background and characteristics. The defendant is 32 years old and was born in Jacksonville, Florida. He was raised by both his parents, who were married throughout his childhood. The defendant and his family moved often because his father was a military servicemember. He reports having a normal childhood, that he was always provided with the basic necessities, and denied experiencing any physical or sexual abuse. The defendant's father died ten years ago; his mother resides in Virginia Beach and the defendant remains close to her. The defendant also has two younger sisters, who reside in Utah and in Virginia Beach, and with whom he also has a good relationship. The defendant was previously married, but separated in 2016 and divorced in 2019. He has one child from that relationship.

The defendant graduated from Churchland High School in Portsmouth, Virginia in 2008, and attended some college at Tidewater Community College in Norfolk, Virginia, where he maintained a 3.8 GPA. Prior to his arrest, the defendant has worked in medical transportation, as a security card, and most recently, as a technician for a pest control company.

The defendant reports being in excellent physical health with no serious medical problems. He also denies any history of mental health concerns and does not believe he would benefit from a mental health evaluation. He did express an interest in sex offender treatment. The defendant also denies any history of substance abuse and does not believe he would benefit from any substance abuse treatment.

The defendant's criminal history is limited and his criminal history category is accordingly I. His only conviction is for contempt of court in 2014, a misdemeanor. He has two prior arrests, one of which was for assault when the defendant allegedly threatened another individual with a baseball bat. This charge was eventually dismissed.

C. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

The defendant's conduct is extraordinarily serious and warrants an extraordinary sentence. In addition to paying for a sexual encounter with whom he believed was an eleven-year-old girl who was already being victimized by her father, the defendant himself inflicted abuse on several occasions on the defenseless John Doe. Further, the numerous Victim Impact Statements submitted by some of the more than 200 known real children depicted in just a fraction of the defendant's child pornography files speak vividly to the lifelong traumatic impact of both hands-on abuse and the repeated viewing of the abuse by others for sexual gratification. Victims of child sexual abuse are likely to suffer long-lasting effects of the abuse. *See New York v. Ferber,* 458 U.S. 747, 758 n. 9 (1982). *See also* Shanta R. Dube et al., *Long-Term Consequences of Childhood Sexual Abuse by Gender of Victim*, 28(5) Am. J. Prev. Med., 430, 430 (2005) ("Studies examining the long-term effects of childhood abuse and related stressors have found increased risk for outcomes such as substance use and misuse, psychiatric disorders, suicide, and numerous other health and social problems."). The long-term effects of abuse such as that perpetrated by the defendant bear upon the need for just punishment.

D. The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

Protection of the public is a factor of paramount importance in this case and merits the government's requested sentence of imprisonment of thirty years and life term of supervised

release. The defendant has demonstrated a consistent interest in traumatizing children, particularly prepubescent children and those who are even more vulnerable than normal given that they are being abused by a relative. He has also, on multiple occasions, demonstrated that he is all too ready and willing to act on these interests, regardless of the impact his actions may have on others. Indeed, the defendant's conversation with the UC shows a consistent concern only with whether he would get caught, and no concern at all for the well-being of the eleven-year-old Kylie who was being sexually abused by her own father.

E. The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

While incarcerated, the defendant would benefit from sex offender treatment, in which he has expressed an interest. Although the defendant has graduated from high school, he may also benefit from post-secondary education or vocational opportunities.

F. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

The available statutory sentence for the defendant's crime of conviction, 18 U.S.C. § 1591(a)(1), is a mandatory minimum sentence of 15 years, up to a maximum of life. 18 U.S.C. § 1591(b)(1). A sentence of probation is not statutorily authorized. 18 U.S.C. § 3561(a). A term of supervised release is required for a minimum term of five years, and may be imposed for life. 18 U.S.C. § 3583(k). Regarding special assessments, the defendant may be ordered to pay, in addition to the $100 special assessment, the $5,000 special assessment mandated by the Justice for Victims of Trafficking Act of 2015 ("JVTA") for non-indigent defendants, 18 U.S.C. § 3014.

G. The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

Although the government's recommended sentence is above the advisory guidelines range, an upward variance would not create any unwarranted disparities with other defendants convicted

of sex trafficking a minor because the guidelines to not account for several highly aggravating aspects of the defendant's conduct. *See* 18 U.S.C. § 3553(b)(2) (sentence above the guidelines range is appropriate where "there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines").

First, the base guidelines for the defendant's trafficking conviction do not account for the purported child being only eleven years old, and for the defendant being willing to sexually abuse a child whom he believed was already being sexually abused by her father. Second, his particularly heinous sexual abuse of John Doe is only accounted for in the five-level repeat offender enhancement, resulting in about an eight-to-ten-year increase in the guidelines range. Given John Doe's young age and multiple additional vulnerabilities, eight to ten years is wholly insufficient to account for this conduct. Third, the guidelines range does not account whatsoever for the defendant's repeated trafficking of hundreds of images of visual depictions of minors engaged in sexually explicit conduct. For all of these reasons, and also because of the other § 3553(a) factors discussed in the guidelines, an upward variance is warranted.

H. The Need to Provide Restitution (18 U.S.C. § 3553(a)(7))

In his plea agreement, the defendant agreed that restitution was mandatory, and to the entry of a restitution order for the full amount of the victims' losses. ECF No. 30 ¶ 11. The defendant further agreed that pursuant to 18 U.S.C. § 3663(a)(3), victims of the conduct described in the charging instrument, Statement of Facts, or any related or similar conduct are victims within the meaning of 18 U.S.C. § 1593(c) and are entitled to restitution.

To ensure victims have adequate time to request restitution, the government requests that the Court bifurcate the restitution in this matter under 18 U.S.C. § 3664(d)(5), which allows

restitution to take place within 90 days after the sentencing hearing.[1] If the Court grants this request, the government further requests that the Court address at the sentencing hearing whether the defendant will waive his presence at any subsequent regarding restitution. If he does not, then the government would request that he remain in local custody and not be transferred to the BOP until restitution is finally determined.

## VI. Supervised Release Conditions

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d). In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR. *Rogers*, 961 F.3d at 299. Here, the U.S. Probation Office has outlined the mandatory and standard supervised release conditions on pages 21 through 23 of the PSR.

In addition to the mandatory and standard conditions of supervised release imposed for felony convictions, the government requests that the Court impose the standard supervised release conditions that the U.S. Probation Office typically requests and the Court typically imposes, with slight variations, for defendants convicted of child pornography offenses involving the Internet:

1. The defendant shall participate in a program approved by the United States Probation Office for mental health treatment, to include a psychological

---

[1] NCMEC has generated four Victim Information Reports stemming from know victims portrayed in the defendant's child pornography materials (one for his phone and three for MEGA, an online cloud storage account). The defendant's counsel has diligently resolved all restitution request for victims stemming from one of these reports; however, the government did not receive the other three reports until on or about November 3, 2022. As of the date of this filing, it has not yet notified identified victims.

    evaluation, and sex offender treatment. The cost of this program is to be paid by the defendant as directed by the probation officer. The defendant shall waive all rights of confidentiality regarding sex offender/mental health treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.

2. The defendant shall not be in the company of or have contact with children who he knows are under the age of 18 without prior approval of the probation officer. Contact includes, but is not limited to, letters, communication devices, audio or visual devices, visits, or communication through a third party. The defendant shall immediately report any such contact to the probation officer. This condition does not encompass persons under the age of 18, such as waiters, cashiers, ticket vendors, minors who happen to be at a public gathering, etc., with whom the defendant must deal with in order to obtain ordinary and usual commercial services or with whom the defendant randomly happens to be in same vicinity at a public gathering.

3. The defendant shall not engage in employment or volunteer services that allows him access to minors.

4. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006,[2] the defendant shall register with the state sex offender registration agency in any state where the defendant resides, works, and attends school, according to federal and state law and as directed by the probation officer.

5. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006,[3] the defendant shall submit to a search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of supervision.

---

[2] 18 U.S.C. § 3583(d) ("The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act."). This condition is noted as a mandatory condition on page 21 of the PSR.

[3] *Id.* ("The court may order, as an explicit condition of supervise release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, but any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.").

6. The defendant shall not possess or use a computer to access any online computer services at any location, including employment, without the prior approval of the probation officer. This includes any internet service providers, bulletin board systems, or any other public or private computer network.

7. The defendant shall comply with the requirements of the computer monitoring program as administered by the Probation Office. The defendant shall consent to the installation of computer monitoring software on any computer to which the defendant has access. Installation shall be performed by the probation officer. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the at the time of installation to warn others of the existence of the monitoring software. The defendant shall also notify others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software. The costs of the monitoring shall be paid by the defendant.

8. The defendant shall consent to the use of Wi-Fi detection devices, to allow the probation officer to detect the presence of wireless signal inside or outside of the defendant's residence.

9. The defendant shall not possess or utilize any video gaming system, console, or other such device which would enable contact and/or the sharing of data with other individuals known or unknown to the defendant.

10. The defendant shall not have any access to or possess any pornographic material or pictures displaying nudity or any magazines using juvenile models or pictures of juveniles.

11. The defendant shall not utilize any sex-related adult telephone services, websites, or electronic bulletin boards. The defendant shall submit any records requested by the probation officer to verify compliance with this condition including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

12. The defendant shall submit to polygraph testing as directed by the United States Probation Officer as part of his sex offender therapeutic program. The costs of the testing are to be paid by the defendant as directed by the probation officer.

13. The defendant shall submit to an Abel Assessment for Sexual Interest (AASI) or similar test as directed by the probation officer as part of his sex offender therapeutic treatment with the costs to be paid by the defendant, as directed by the probation officer.

*See e.g., United States v. Hambrook*, 4:20cr26, ECF No. 33 (Judge Allen); *United States v.*

*Perez-Duenas*, 2:20cr6, ECF No. 38 (Judge Doumar); *United States v. Bluhm*, 2:20cr51, ECF No. 40 (Judge Smith).

## VII. Conclusion

For the reasons stated above, the government submits that a sentence of imprisonment of 360 months would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

        Jessica D. Aber
        United States Attorney

By: _____/s/_____
        E. Rebecca Gantt
        Assistant United States Attorney
        VSB No. 83180
        101 West Main Street, Suite 8000
        Norfolk, Virginia 23510
        Tel. - 757-441-6350
        Fax - 757-441-6689
        E-mail Address – rebecca.gantt@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

I further certify that on November 4, 2022, I will send an electronic copy of the foregoing to the following:

Kalyn M. Monreal<br>
United States Probation Officer

/s/
E. Rebecca Gantt
Assistant United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov