IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Docket No. 2:22-cr-42 |
| CHRISTAFER DOUGLAS FRIEND, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

In anticipation of sentencing, the defense submits this memorandum setting forth its position that a sentence of 17 years in prison, followed by a lengthy term of supervised release, is the appropriate sentence. Mr. Friend has reviewed the most recent Presentence Investigation Report (PSR). The Probation Office has calculated the advisory guideline range as 235 to 293 months (approximately 19-24 years) of imprisonment. The defense has one objection to the Presentence Investigation Report but does not seek to litigate that objection, as noted in the addendum to the PSR.[1] A sentence below the 235–293-month range is appropriate in this case for the reasons set forth below. Along with this memorandum, the defense is submitting a letter from Mr. Friend to this Court. *See* Exh. 1.

There is no explaining away or running from what Mr. Friend did. He has admitted his criminal conduct and will appear before this Court for sentencing in two weeks. His offense is troubling and threatens to crowd out other aspects of his history

---

[1] Defense counsel has noted an objection to certain information set forth in the PSR pertaining to Mr. Friend's alleged sexual abuse of John Doe. This objection was raised to protect Mr. Friend's rights should the state of Virginia prosecute him for offenses related to that alleged abuse in the future.

1

and character. Hopefully, this Court sees the bigger picture. In arriving at a sentence that is sufficient but not greater than necessary, this Court needs to balance the equities of Mr. Friend's crime, his history, sentences imposed in similar cases, and the realities of incarceration, especially incarceration for a sex offense involving a minor. There are many aspects of this case that point to Mr. Friend's potential for rehabilitation and the need for a measured degree of punishment. A sentence of 17 years and a lengthy term of supervised release is appropriate; it balances the crime, Mr. Friend's character, and the statutory purposes of sentencing. *See* 18 U.S.C. § 3553(a).

I.  **A sentence of 17 years with a substantial term of supervised release sufficiently accounts for the nature and circumstances of the offense and is appropriate given Mr. Friend's personal history and characteristics.**

It is within this Court's discretion to impose a below-guideline sentence. *See Gall v. United States*, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *see also Kimbrough v. United States*, 128 S. Ct. 570 (2007) (noting that courts may vary from Guideline ranges based solely on policy considerations, including disagreement with the Guidelines); *Rita v. United States,* 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California*, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer bound by the Guidelines, but are required to consider them along with the sentencing goals in 18 U.S.C. § 3553(a)). Time and again, the Supreme Court has reiterated that "the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S. Ct. at 577 (Scalia, J., concurring). A sentencing

2

court "may not presume that the Guidelines range is reasonable," and instead "make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. In this case, a sentence below the guideline range is sufficient to accomplish the purposes of sentencing while taking into account the nature of the offense and Mr. Friend's personal history and characteristics.

> A. *Though the offense is undoubtedly serious, a sentence of 17 years and a lengthy term of supervision, along with the collateral consequences of a felony conviction and especially a conviction for a sex offense, is sufficient to address Mr. Friend's criminal conduct in this case.*

With any crime, there is always a continuum of behavior. Every violation of federal law is serious, but the gradients of the behavior are what ultimately dictate the punishment. Here, as in most cases, the guidelines fail to account for the subtle gradients of the case. The offense conduct and Mr. Friend's admissions relating to that conduct are set forth in detail in the Presentence Report and will not be repeated at length here. Instead, the defense will highlight certain aspects of the offense and Mr. Friend's post-offense conduct that support the requested sentence.

Mr. Friend made contact with an undercover officer through a social networking application. In conversations with the officer, who was posing as the father of an 11 year-old girl, Mr. Friend made plans to engage in a commercial sex act with the girl. He arranged to meet at a location, drove to that location, and paid the undercover officer. He was immediately arrested. He admitted his conduct and intent to officers and allowed them to search his electronic devices. Images and videos containing child pornography were found on those devices, some of which he'd shared with other individuals. There

are also allegations of sexual abuse involving John Doe, which will likely result in state charges in the future.

There is also what Mr. Friend's offense was not. It was not the product of a larger child prostitution ring. There was not significant planning involved. His chat was with a law enforcement officer. He did not financially profit from the prostitution of minors. Mr. Friend does not offer the foregoing in an attempt to justify or excuse his conduct. He acknowledges that he is guilty and that his actions merit punishment. As he explains in his letter to this Court, Mr. Friend has come to realize just how harmful and traumatic it was for him to engage in the exploitive behavior at issue here. *See* Exh. 1. Just the fact that he was charged with a crime has had a tremendous impact—he knows with certainty that he cannot commit this type of behavior in the future and, if he does, he'll be caught, prosecuted, and imprisoned. *Id.*; PSR ¶ 19. Seventeen years in prison is unquestionably a serious punishment and fits the offense in this case.

> B. *Seventeen years in prison and a lengthy term of supervised release is an appropriate sentence given Mr. Friend's history.*

Besides the nature of this offense, the Court must consider Mr. Friend's personal history and characteristics. Mr. Friend was born in 1990. He was raised by both of his parents. His father was in the U.S. Navy and the family moved around frequently during Mr. Friend's childhood. PSR ¶ 48. Mr. Friend successfully graduated from Churchland High School in Portsmouth, Virginia, despite struggling academically due to dyslexia. PSR ¶ 57. He enrolled at Tidewater Community College in 2008. He spent a year there and earned a 3.8/4.0 GPA. PSR ¶ 58. Mr. Friend dropped out of school around the time

of his parents' divorce so that he could earn money to support himself and his mother. *Id.* Since entering the workforce, he maintained full-time employment until his arrest in this case. PSR ¶¶ 60-63. He's worked in transportation, security, and pest control. *Id.*

In 2015, Mr. Friend married Jo-Ann Rudgers. The couple has one child. Mr. Friend and Ms. Rudgers separated in 2016 and divorced in 2019. PSR ¶ 50. Mr. Friend no longer has a relationship with his former spouse and child; he hasn't had contact with them since January 2022 due to the charges in this case. *Id.* He's been ordered to pay child support and did his best to fulfill that obligation prior to his arrest. *Id.*

Mr. Friend has indicated a desire to obtain a vocational/trade skill while incarcerated. PSR ¶ 59. He wants to pursue additional education. *Id.* He's also acknowledged his need for sex offender treatment. PSR ¶ 55. He requests this Court's recommendation for treatment the Bureau of Prisons offers. Mr. Friend will have familial support during his incarnation and after. He has good relationships with his mother and two sisters.

As noted above, the parties expect that Mr. Friend will be prosecuted by the state following his incarceration for the instant offense.[2] Given the anticipated state charges, it is unlikely Mr. Friend will be eligible for pre-release placement in a BOP halfway house. And, depending on when the charges are filed, the resulting detainer would impact Mr.

---

[2] Given the likelihood of state charges, it is imperative to protect Mr. Friend's rights. Accordingly, any discussion of the evidence or allegations described the PSR, specifically ¶¶ 27 and 32, is not an admission by Mr. Friend as to their accuracy or veracity.

Friend's security classification and designation in the BOP. He asks this Court to consider the implications of state charges in crafting the appropriate sentence in this case.

## II. The advisory guideline range as calculated in the PSR overstates the seriousness of the offense and Mr. Friend's risk of recidivism.

A sentence of 17 years in prison followed by supervised release amounts to a downward variance of approximately two years from the bottom advisory guideline range—about ten percent of the range. Such a sentence complies with § 3553(a)'s statutory mandate: "[t]he court shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a) (emphasis added). This overarching principle must guide the Court's sentencing determination, and the applicable advisory guideline range is only one of seven factors to be considered in making the determination. *See* 18 U.S.C. § 3553(a)(1) – (7).

It is meaningful that Mr. Friend agreed to plead guilty in a timely fashion, thereby saving the Court and government resources. From the beginning, he's wanted to resolve this case efficiently, accept his punishment, and work on moving forward. In fact, he accepted responsibility for his actions during his initial encounter with law enforcement and that acceptance has continued through today. *See* Exh. 1. Mr. Friend respectfully requests that the Court consider this in fashioning the appropriate sentence.

A 17-year term of imprisonment is substantial and the term of supervision to follow will further reduce Mr. Friend's recidivism risk. After all, supervision, and especially a lengthy term like the one Mr. Friend will likely serve, is a substantial restriction of his liberty. *Gall v. United States*, 552 U.S. 38 (2007) (explaining that standard

conditions of supervision "substantially restrict [defendants'] liberty"). Moreover, he will be a felon and always excluded from central pillars of American civic and social life as a result. *See United States v. Nesbeth*, 188 F. Supp. 3d 179, 180 (E.D.N.Y. 2016) (documenting the "broad range of collateral consequences that serve no function other than to further punish criminal defendants after they have completed their court-imposed sentences" and describing how being branded as a felon is a form of "civil death" that "send[s] the unequivocal message that 'they' are no longer part of us").

Finally, he will be branded publicly as a sex offender—a status that will place him at the margins of society for the rest of his life. *See Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a [person] as a sex offender."); *see also Smith v. Doe*, 538 U.S. 84, 115 (2003) (Ginsburg, J., *dissenting*) (describing the "profound humiliation and community-wide ostracism" that attends sex offender community notification). The First Circuit, in *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012), aptly noted that "[s]ometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed." The stigma of a felony conviction – and particularly a conviction for a sex offense – is more intrusive and pervasive today than ever before due to the availability of information on the internet. *See generally* Wayne A. Logan, *Informal Collateral Consequences*, 88 Washington L. Rev. 1103 (2013) ("Today, convict status serves as a perpetual badge of infamy, even serving to impugn reputation beyond the grave."). Now, Mr. Friend knows in no uncertain terms what will happen if he engages in any criminal

activity. He will carry the stigma and suffer the consequences of this conviction for the rest of his life.

**III.     A sentence of 17 years in prison with a substantial term of supervised release is sufficient but not greater than necessary to satisfy the purposes of sentencing in this case.**

　　　A.  *Mr. Friend will be impacted by significant collateral consequences.*

Mr. Friend has been and will continue to be punished, deterred from committing future crimes, and rehabilitated while serving a lengthy term of imprisonment and on supervision. The collateral consequences of the instant conviction are significant and will likely impact Mr. Friend for the rest of his life. *See e.g.,* U.S. Dept. of Justice, Office of the Pardon Attorney, *Statutes Imposing Collateral Consequences upon Conviction* (Nov. 16, 2003), *available at* http://www.justice.gov/pardon/collateral_consequences.pdf (last visited Jan. 20, 2021).[3]

For example, Mr. Friend will be subject to a registration requirement, which is a particularly oppressive collateral consequence. *See e.g., United States v. Mateo*, 299 F.Supp.2d 201 (S.D.N.Y. 2004) ("[T]here is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offender's actual deprivation of liberty when

---

[3] This publication describes the federal consequences of convictions on an individual's ability to vote; serve on federal jury; hold federal office, federal employment or certain federally-issued licenses; serve in armed forces; participate in federal contracts or programs; receive federal benefits; become a U.S. citizen or remain in the U.S.; and live free from registration or community notification requirements.

incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement…). His offense of conviction carries an inescapable stigma. *See e.g., United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming on plain error review district court's finding that the collateral consequences of defendant's child pornography conviction should factor into its analysis of what constitutes "just punishment," including "the interruption of defendant's education and employment, the dissolution of his engagement, *and the stigma attached to this specific offense.*") (emphasis added).

    B.    *Mr. Friend will be ordered to pay $ 24,000.00 in restitution – another consequence of his offense.*

Mr. Friend has entered into agreements to pay a total of $24,000.00 in restitution. A total of eight claims were resolved for $3,000.00 each. He will begin paying this restitution as soon as practicable and will undoubtedly be making payments far into the future. These payments will serve as a persistent reminder of the consequences of his actions.

    C.    *A sentence of 17 years and a substantial term of supervision will not create unwarranted disparity.*

Mr. Friend is asking this Court to vary downward from the applicable range. He entered a guilty plea to attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1) , and 2 (Count 1). The statutory penalty range for the offense is 15 years to life imprisonment. As noted above, the Probation Office determined the applicable

9

guideline range as 235 to 293 months of imprisonment. The following cases from this District and others show that a below-guideline sentence of 17 years (204 months) would be appropriate in this case considering the mitigating and aggravating factors that are present.

In *United States v. Chapman,* No. 1:13-cr-298, ECF No. 25 (E.D. Va. July 11, 2013), the defendant was charged with three counts: conspiracy to commit sex trafficking of a child, sex trafficking of a child, and interstate transportation of a minor for purposes of prostitution. The case proceeded to trial and the defendant was found guilty of all charges. No. 1:13-cr-298, ECF No. 59 (E.D. Va. Oct. 17, 2013). According to the government, evidence at trial showed that the defendant prostituted a 15 year-old girl. No. 12:13-cr-298, ECF No. 64 (E.D.Va. Jan. 17, 2014). The defendant and her co-defendant "instructed her how to have sex with strangers, they encouraged her to have sex without a condom, they arranged for her to meet with multiple strangers to have sex, they posted sexually suggestive photographs of her online, and they used the money earned by the victim to pay for a place for them to stay." *Id.* The victim testified that when she told the defendant she'd been raped, "the defendant was unmoved and simply told her that she should not feel gross and encouraged the victim to continue to be a prostitute." *Id.* In addition to the 15 year-old victim in the case, the defendant posted prostitution advertisements for other women, including other girls. *Id.* In *Chapman,* the applicable guideline range was 235-293 months of imprisonment, like the range here. *See id.* The government asked for a sentence within the guideline range. *See* No. 12:13-cr-298, ECF

No. 64. The Court imposed concurrent sentences of 132 months of imprisonment on each count. No. 12:13-cr-298, ECF No. 70 (E.D.Va. Jan. 24, 2014).

In *United States v. Jefferies*, No. 1:12CR143, ECF No. 47 (E.D. Va. July 6, 2012), the Court sentenced the defendant to 120 months. The guideline range was 292 to 365 months. The defendant was a member of the Crips who participated in a sex trafficking conspiracy of two 17-year-old female juveniles over a two-month period. No. 1:12CR143, ECF No. 42 (E.D. Va. June 29, 2012). In *United States v. Ghile,* No. 1:12CR182, ECF No. 72 (E.D. Va. Sept. 14, 2012), the Court imposed a 120-month sentence when the guideline range was 188-235 months. Similar to *Jefferies,* the defendant was member of the Crips who participated in a sex trafficking conspiracy over ten months and trafficked two 17-year-old female juveniles. No. 1:12CR182, ECF No. 69 (E.D. Va. Aug. 31, 2012).

In *United States v. Forbes*, this Court sentenced a defendant who travelled in interstate commerce to have sex with a minor. No. 4:17cr117 (E.D. Va. July 18, 2018) (Morgan, J.). In *Forbes*, the defendant, who was in the Navy, started an online relationship with a minor who told the defendant that she was 14 (she was really 11). No. 4:17cr117, ECF No. 17. After interacting online for some time, Forbes flew to Louisiana to meet with the minor. Forbes picked up the minor, took her to a Super 8 Motel where the two drank alcohol together, and then they engaged in oral and vaginal sex. *Id.* Following that encounter, Forbes dropped Jane Doe off outside of her middle school. *Id.* The Court sentenced Forbes to 84 months in prison. No. 4:17cr117, ECF No. 29.

In *United States v. Otto,* the court imposed a sentence of 180 months and lifetime supervised release on one count of production of child pornography. No. 3:17-cr-60, ECF

11

No. 58 (D. Or. Apr. 11, 2019). The government described Mr. Otto's conduct in its sentencing pleading as follows:

> In 2016, over the course of several months, David Ernest Otto found, contacted, groomed, and sexually exploited half-a-dozen minor girls. At Mr. Otto's direction—and, consistent with the dominant-submissive relationships he created, on his command—the girls produced and sent Mr. Otto image after image and video after video of custom-made child pornography: Mr. Otto directed them to penetrate themselves anally and vaginally with foreign objects. And they did. Mr. Otto directed them to call him 'Daddy'. And they did. Otto directed the victims to delete the evidence of his crimes. And they did.

No. 3:17-cr-60, ECF No. 55..

In *United States v. William Tyson*, No. 4:16cr58, ECF No. 25 (E.D. Va. Dec. 1, 2016), Mr. Tyson pled guilty to receipt of child pornography. He had a criminal history category of I and a total offense level of 35, producing a guideline range of 168 to 210 months of imprisonment. Mr. Tyson had a history of being sexually abused by his step-father. By his own admission, he had been viewing child pornography for approximately 15 years and used a peer-to-peer file-sharing program on his computer. Mr. Tyson utilized the KIK application to find girls who were 13 or older. While he never actually took any steps in furtherance of meeting these girls, he would ask these girls to send to him nude photographs or videos of their genitals, which they did. A forensic evaluation revealed that the images and videos were clearly of underage females and the actual amount of child pornography images was 2,439. Mr. Tyson was sentenced to 144 months of incarceration.

Recently, the Court imposed a sentence of 252 months of imprisonment in *United States v. Skinner,* No. 3:19-cr-19, ECF No. 166 (E.D. Va. 2022). Mr. Skinner pled guilty to production of child pornography. Over the course of a month, Mr. Skinner surreptitiously recorded 49 videos of a 14-year-old victim engaged in masturbation. Then, he flew from New Zealand to the United States when the victim ended their online relationship. He appeared at the victim's house and tried to enter. Police arrested him in a neighbor's yard after he was injured by the victim's mother. The government requested a sentence of 30 years, the defense requested a sentence of 15 years, the mandatory minimum, and the Court imposed 21 years' imprisonment.

Following trial, the court sentenced Ghislaine Maxwell to a total term of imprisonment of 240 months. *United States v. Maxwell,* 1:20CR330, ECF No. 696 (S.D.N.Y. June 29, 2022). She was found guilty after trial of transportation of a minor with intent to engage in criminal sexual activity, sex trafficking of an individual under the age of 18, and conspiracy to transport minors with intent to engage in criminal sexual activity. It was the government's position that the applicable guideline range was 360 to 660 months of imprisonment under U.S.S.G. § 2G1.3 and that a sentence within that range would be appropriate.[4] No. 1:20-cr-330, ECF No. 670 (S.D.N.Y. June 22, 2022) (internal citations removed). As briefly summarized by the government: "[f]rom 1994 to 2004, the defendant and Epstein worked together to identify girls, groom them, and then entice them to travel and transport them to Epstein's properties in New York, Florida, New Mexico, and

---

[4] The United States Probation Office calculated the sentencing range as 292 to 365 months of imprisonment. No. 1:20-cr-330, ECF No. 670 (S.D.N.Y. June 22, 2022).

13

elsewhere. The girls—some of whom were as young as 14 years old—were then sexually abused, often under the guise of a "massage.[']" *Id.* (internal citations removed). The government quoted the Probation Office as observing that "the defendant's conduct reflected a dark world view: 'it appears that the defendant viewed the victims as objects who could be manipulated for her and Epstein's own selfish purposes without any regard for their personal wellbeing, health, or safety.'" *Id.* The Probation Office "characterized the defendant's offense conduct as 'heinous and predatory in nature'…[and] emphasized that '[t]he gravity of Maxwell's involvement in the offense is immense,' and that she was essential to 'fostering a culture for the abuse to continue.'" *Id.*

While the cases described here are not exactly the same as Mr. Friend's, there are comparable factors. Because sentencing requires an assessment of the *relative* seriousness of the offense, these other cases are relevant. All the cases described above involved serious sexual misconduct with minors. *Forbes* involved hands-on sexual activity with a minor, and so did *Maxwell*. *Otto* involved multiple minor victims and commands to engage in penetration with various objects. *Tyson* involved soliciting acts of production through KIK messenger. *Chapman* involved the repeated victimization of a 15-year-old through forced prostitution. *Skinner* involved the surreptitious production of child pornography and a trip from New Zealand to the United States to see the victim in person. For the offense of conviction, Mr. Friend's requested sentence of 17 years is consistent with these and other sentences imposed in similar cases.

      C.      *A sentence of 17 years with a lengthy term of supervised release will provide deterrence and the ability for community-based rehabilitation.*

A sentence of 17 years in prison plus supervision will deter Mr. Friend and others from future criminal conduct. Mr. Friend was caught, prosecuted, and now faces sentencing. He knows that if he engages in the same behavior in the future, he'll be caught and will face even more time in prison. Especially for someone like Mr. Friend with limited criminal history, the certainty of punishment is enough to achieve deterrence. "[T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or increased." Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013). With respect to sex offenses, individual studies and meta-analyses consistently find that "***incarceration has little, if any, impact on recidivism***." Kevin L. Nunes, *et al.*, *Incarceration and Recidivism among Sexual Offenders*, 31 Law & Human Behavior 305, 314 (2007) (emphasis added). Indeed, not only is the evidence in support of incarceration's deterrent effect "unimpressive," the Nunes study found that, "[c]ounterintuitively, some [sex] offenders may actually experience incarceration as *less* aversive that some alternative sanctions." *Id.* at 306. Therefore, even assuming that risk of re-offense is a problem, more incarceration does nothing to solve it.

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is the one of greatest practical concern, and also the most capable of being measured. Judges should often be encouraged to impose probation or a below-

guideline sentence in light of this purpose. *See, e.g., United States v. Hanson*, 561 F. Supp. 2d 1004, 1010 (E.D. Wis. 2008) (Commission sought to increase penalties for offenders who had a history of sexually exploiting or abusing minors and posed a greater risk of recidivism, but this was based on a study of offenders in 1994 and 1995, while most offenders today have no such histories); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1112 (N.D. Iowa 2009) (Bennett, J.) ("[w]here the particular defendant convicted of a child pornography offense has a low potential for recidivism, particularly where that low potential is well informed by expert evaluations and the defendant's post-arrest conduct, the defendant has no significant prior criminal history, and where the defendant appears genuinely remorseful about his crimes and aware of the harm that they cause, several courts have found little need to impose a full guideline sentence to protect the public.").

Proper sex offender treatment will help eliminate any minimal risk of recidivism by addressing *why* Mr. Friend committed the instant offense. This treatment is best achieved in the community, where he'll be able to continue with the same provider. "[T]treatment in the community is more effective than treatment in institutions. Although there may be obstacles to changing existing exclusionary policies; evidence demonstrates that sex offenders, both adolescent and adult, can be treated successfully in community settings." Bitna Kim et al., *Sex Offender Recidivism Revisited: Review of Recent Meta-analyses on the Effects of Sex Offender Treatment*, 17 Trauma, Violence, and Abuse 1, 11 (2016). Though prison is not a means of providing treatment and the community is the best place for Mr. Friend to be treated, the BOP does offer sex offender treatment. *Tapia v. United States*, 564 U.S. 319 (2011); 28 U.S.C. § 994(k) ("The Commission shall insure that the

guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment."). Again, Mr. Friend intends to take advantage of whatever treatment is offered. In this case, a sentence of 17 years in prison with supervised release to follow will incapacitate Mr. Friend *and* allow him to obtain treatment.

## OBJECTION TO PSR

As mentioned throughout this pleading, the defense is objecting to certain information in the PSR and to the guideline range. The defense is raising these objections in an effort to protect Mr. Friend's rights in the event he's prosecuted by the state. First, the defense objects to ¶ 27 of the PSR, which is the application of U.S.S.G. §4B1.5(b)(1). Specifically, the defense objects to the conclusion that Mr. Friend engaged in a pattern of activity involving prohibited sexual conduct. In this regard, the defense assumes that the conduct described in ¶ 32 forms part of the basis of the "pattern." And, second, the defense objects to the allegation in ¶ 32 that Mr. Friend sexually abused John Doe. These objections are being made out of concern that any failure to object will be construed as an admission in a future state prosecution. In short, the defense is not seeking to litigate these objections but merely notes them.

## CONCLUSION

Mr. Friend respectfully requests that this Court impose a sentence of 17 years in prison to be followed by a substantial term of supervised release. A 17-year term of

imprisonment will satisfy the factors as set forth in 18 U.S.C. § 3553(a), providing for a sentence that is sufficient, but not greater than necessary.

        Respectfully submitted,

        CHRISTAFER DOUGLAS FRIEND

By:    /s/
    Keith Loren Kimball
    Virginia State Bar No. 31046
    Supervisory Assistant Federal Public Defender
    Attorney for Christafer Douglas Friend
    Office of the Federal Public Defender
    150 Boush Street, Suite 403
    Norfolk, Virginia 23510
    Telephone: (757) 457-0870
    Telefax: (757) 457-0880
    Email: keith_kimball@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November, 2022, I filed this pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

I further certify that I have sent a copy of this pleading, via electronic mail, to:

Kalyn M. Monreal
United States Probation Officer
Email:  Kalyn_Crabb@vaep.uscourts.gov

                                                _____/s/_____
                                                Keith Loren Kimball
                                                Virginia State Bar No. 31046
                                                Supervisory Assistant Federal Public Defender
                                                Attorney for Christafer Douglas Friend
                                                Office of the Federal Public Defender
                                                150 Boush Street, Suite 403
                                                Norfolk, Virginia 23510
                                                Telephone:  (757) 457-0870
                                                Telefax:  (757) 457-0880
                                                Email: keith_kimball@fd.org